IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBRA HOLMES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 09 C 5177 |
| TRIBUNE DIRECT MARKETING, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Debra Holmes has sued Tribune Direct Marketing, Inc. ("Tribune") under Title VII of the Civil Rights Act of 1964. She asserts claims for retaliation, race and national origin discrimination, and harassment.[1] Tribune has moved for summary judgment on all of Holmes's claims. For the reasons stated below, the Court grants Tribune's motion in part and denies it in part.

## Background

Tribune is a Delaware corporation with operations in Northlake, Illinois. It offers printing and distribution services for direct-mail marketing campaigns. Holmes is an Illinois resident and a former Tribune employee. She is of African-American and Native American descent.

Holmes began working in Tribune's solo mail department in July 2004 as a

---

[1] The Court thanks appointed counsel James R. Pittacora of the law firm of Pittacora and Crotty for his diligent work on Ms. Holmes's behalf.

production operator.  She reported to production supervisor Larry Gresham, who reported to solo mail manager Ray Hoshell.  As a production operator, Holmes was responsible for feeding documents into a printer, quality-checking the printing process, and sorting the printed documents into mail trays.  Senior production operators then reviewed the production operators' work and measured their productivity.  To keep track of her own progress, Holmes had a practice of initialing the printed materials that she handled.

On December 7, 2008, Holmes arrived to work late.  According to Tribune, Holmes had no remaining time-off benefits as of that date.  As a result, Gresham issued her an attendance violation notice on December 10.  The notice stated that Holmes had used up all of her accrued time-off benefits and warned her that an additional violation of any company policy could lead to further disciplinary action, including termination.  Holmes signed the notice, thereby acknowledging that she had discussed the violation with her supervisors.

Holmes filed a charge of racial and national origin discrimination with the Equal Opportunity Employment Commission ("EEOC") on December 18, 2008.  Holmes provided the following details in support of her charge:  "During my employment, I have been subjected to different terms and conditions of employment, including but not limited to, denial of training.  On December 10, 2008, I was disciplined for an infraction for which similarly situated non-Black, non-American employees are not disciplined.  I believe I have been discriminated against because of my race, Black, and my national origin, American."  First Am. Compl., Ex. C.  Holmes continued working at Tribune at

Tribune after filing the EEOC charge and occasionally took notes while working to document acts she perceived as discriminatory.

On January 21, 2009, Holmes was working when a senior production operator reported a production error to Gresham. According to the senior production operator, the error involved materials that originated at a printer operated by Holmes and a temporary worker. Gresham inspected the erroneously printed materials and, after recognizing the number sequence and Holmes's handwriting on the box, concluded that Holmes had run the printing job that caused the error. Later that day, he approached Holmes, told her about the error, and asked her to be more careful in the future. Holmes responded that she did not run the job that caused the error. She later reiterated this to Gresham during her break and also told him that she thought other employees were tampering with her work. Gresham testified that Holmes was indignant and argumentative during this conversation. Hoshell also testified that he overheard Holmes yelling at Gresham.

The next day, Holmes called Gresham and left him a voicemail message. She emphasized that she had been very careful about her work and reiterated her belief that other employees had tampered with her materials. She suggested that another employee handled the materials containing the error and said "[i]f you going to be playing dangerous games you better watch yourself." Holmes Dep., Ex. 13. Later that day, she left a second message for Gresham in which she stated that

> You as a supervisor need to think about what's going on in your department cause Larry I'm not playing. Like I said I'm not going to play any games. I come there, I do my job I mind my business and that's all I'm going to do. So, the little pointing fingers at me, *you can rest assured*

> *I'm going to protect myself and right now I feel like I got to protect myself so Alex, Teresa Guzman and Lucy Moreno, hope they better watch out because they want to play these little, these little juvenile games, Debra Holmes is not playing the game.* The only game I'm going to play is to do my job and do the best job I can do.

Holmes Dep., Ex. 14 (emphasis added).

Gresham retrieved Holmes's messages when he returned to work on January 25. He called Hoshell that day and told him that he believed Holmes's messages contained threats against her co-workers. Gresham also sent Hoshell an e-mail to document his receipt of Holmes's messages. In the e-mail, Gresham asked Hoshell for his "opinion of how to best manage Debra Holmes under the circumstances of her EEOC filing and in light of what may be construed as leaving threatening and harassing voice mail messages." Gresham Dep., Ex. 9. Hoshell testified that he told Gresham to keep Holmes working separately from the other employees and to save the messages so that Hoshell could listen to them when he returned to work the next day.

On January 26, Hoshell sent an e-mail to Tribune's human resource department to determine what the company should do in light of Holmes's messages. He stated that "I can't have her poisoning the entire crew because of her actions. She can be seen taking notes all day long. I'm not sure what the next step would be due to her formal complaints. This is getting totally out of hand." Hoshell Dep., Ex. 9. That afternoon, Gresham asked Holmes to come to his office. When she arrived, Hoshell and a security official were present. Hoshell told Holmes that he and Gresham had listened to her messages, felt that they were threatening, and had decided to terminate Holmes's employment.

Holmes filed a second charge with the EEOC on January 29, 2009. She indicated that her claims were for race discrimination, sex discrimination, and retaliation. She wrote that "[o]n December 18, 2008, I filed a charge of discrimination, 440-2009-01582. I was subsequently discharged. I believe I have been discriminated against because of my race, Black, sex, female and retaliated against for engaging in a protected activity." First Am. Compl., Ex. D. On May 26, 2009, the EEOC dismissed both of Holmes's charges and issued separate notices of right to sue. Holmes filed the present lawsuit on August 24, 2009.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**1.    Race/national origin discrimination claim**

Holmes first contends that Tribune discriminated against her based upon her race and national origin. She alleges several different adverse actions, including (1)

denial of promotion and training opportunities, (2) discriminatory disciplinary actions, and (3) underpayment relative to employees outside of her racial group.

To avoid summary judgment on her discrimination claim, Holmes "must either point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue (the 'direct' method) or establish a prima facie case under the *McDonnell Douglas* formula (the 'indirect' method)." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849-50 (7th Cir. 2010); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Holmes seeks to establish her discrimination claims via the indirect method. To do so, she must show that (1) she is a member of a protected class; (2) her job performance met Tribune's legitimate expectations; (3) she suffered an adverse employment action; and (4) a similarly situated individual outside of her protected class was treated better. *Egonmwan*, 602 F.3d at 850. If she can make a prima facie case, Tribune must offer "legitimate, nondiscriminatory reasons for [its] actions" in order to shift the burden back to Holmes, who then must demonstrate those reasons to be pretextual. *Id.*

### a. Promotion and training

Holmes first contends that Tribune discriminated against her by failing to promote her or train her in accordance with her performance review recommendations. She testified that she repeatedly requested additional training on different printing equipment so that she could obtain experience necessary to advance to a senior production operator position, but Tribune never provided the training. Gresham acknowledged in his deposition testimony that Holmes received only "minimal or some

exposure" to certain printers over a multi-year period. Hoshell also stated that he thought it would be "out of the ordinary" for a production operator to go untrained on particular equipment for as little as six months. Graham Dep. 40:21; Hoshell Dep. 30:5-7. At the same time, the parties agree that Tribune allowed Moreno—who was also a production operator, reported to Gresham, and received the same satisfactory performance ratings as Holmes—to volunteer as a senior production operator and thereby gain valuable experience. There is also no dispute that Moreno, who is neither African-American nor Native American, was promoted to senior production operator on February 1, 2009, just six days after Holmes's termination. Based on this evidence, a reasonable jury could find that Holmes has satisfied all four elements needed to establish a prima facie case of discrimination.

Tribune argues that the denial of training was not an adverse employment action. There is no such rule. *See Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003) ("A discriminatory denial of job-related training can constitute an adverse employment action under Title VII"). To be sure, an employer's action "must materially alter the terms and conditions of employment" to constitute an adverse employment action within the meaning of Title VII. *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (internal quotation marks omitted). The facts described above, however, would permit a reasonable jury to conclude that Tribune denied training to Holmes while granting volunteering opportunities to another employee who later received a promotion based upon the experience she gained while volunteering. In the Court's view, this is sufficient to raise a genuine issue of fact regarding whether the denial of training was an adverse employment action.

Tribune also asserts that Moreno is not similarly situated to Holmes because she was promoted only after Holmes's termination. But as noted above, Holmes and Moreno shared the same job title, reported to the same supervisor, and received equal overall performance ratings in 2006, 2007, and 2008. *See Rucker v. Illinois Dep't of Children & Family Servs.*, 326 Fed. Appx. 397, 399 (7th Cir. 2009) ("Factors relevant to this assessment include whether the employees had the same job description, reported to the same supervisor, and possessed comparable qualifications"). In light of these similarities, the fact that Moreno was not promoted until after Holmes's termination is of little importance, particularly because the parties agree that Moreno was already volunteering in the senior production operator role before Holmes's termination and received her formal promotion less than one week after Holmes was fired.

Because a reasonable jury could find that Holmes has established a prima facie case of discrimination, the burden shifts to Tribune to articulate a legitimate, non-discriminatory reason for the challenged action. Tribune has offered testimony that Holmes's "minimal" training on certain machines was due to the company's under-utilization of certain equipment as opposed to an intentional, discriminatory effort to deprive Holmes of training. When Gresham was asked in his deposition why Holmes may not have received her recommended training, he responded that it "would depend on the workload. Not all machines are occupied with mail production at the same time, so there might be . . . more of a load on [one machine] and less of a load on [another]." Gresham Dep. 41:6-9. Similarly, he noted that "exposure to folder training is contingent upon the workload and the work flow." *Id.* 41:19-21. Additionally, the parties agree that Moreno actively volunteered for additional training opportunities and thus gained

experience performing senior production operator duties.  Based on these facts, a reasonable jury could conclude that Tribune provided Moreno with greater training and promotion opportunities based upon her own initiative and the company's workflow, not because of animus toward Holmes based on her race or national origin.

Because Tribune has offered legitimate, nondiscriminatory reasons for its differential treatment of Holmes, the burden shifts back to Holmes to show those reasons are pretextual.  To show pretext, a plaintiff must prove that the reasons offered by the employer for the challenged action were not its true reasons but instead are a pretext for discrimination.  *See, e.g., Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007).  Because pretext is "'a deliberate falsehood,'" the Court's "only concern is with the honesty of the employer's beliefs." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008) (quoting *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007)).  A plaintiff's prima facie case, combined with evidence that the employer's asserted justification is false, may permit a fact finder to conclude that the employer unlawfully discriminated.  *E.g., Greene v. Potter*, 557 F.3d 765, 769-70 (7th Cir. 2010).

Holmes has offered no evidence from which a reasonable jury could infer that Tribune's proffered reason for failing to provide Holmes with a promotion or additional training was not its real reason.  Holmes makes much of a supposed inconsistency between the testimony of Gresham and Hoshell regarding the normal pace of a production operator's training.  The Court finds this argument unpersuasive.  As noted above, Hoshell testified that it would be unusual for an employee to go untrained on certain equipment over a six-month period.  But Holmes does not deny that she

received at least some training on the equipment in question.  Though she argues that Moreno and another Hispanic employee were "permitted to 'volunteer' for additional supervisory authority," Holmes does not contend that these employees were given opportunities for training that Tribune would not give her.  Pl.'s Resp. to Def.'s Mem. of Law in Supp. of its Mot. for Summ. J. at 13.  She also offers no evidence suggesting that the workflow issues identified by Tribune were illusory or did not apply to her situation.

In summary, Holmes has offered evidence sufficient to establish a prima facie case of race or national origin discrimination.  Tribune, however, presented a legitimate and non-discriminatory reason for the adverse employment actions alleged by Holmes.  Holmes has "failed to specifically address and refute the facts supporting [Tribune's] proffered reason."  *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 397 (7th Cir. 2010).  Therefore, she has not raised a genuine issue of fact regarding whether this reason was pretextual.

b. **Disciplinary action**

Next, Holmes contends that Tribune discriminated against her when it disciplined her for arriving late to work on December 7, 2008.  She does not allege, however, that Tribune's issuance of an attendance violation notice to her had any tangible effect on her employment that could be expected to "materially alter the terms and conditions of her employment," such as a reduction in her pay or hours.  *Whittaker*, 424 F.3d at 648 (internal quotation marks omitted).  The Seventh Circuit has acknowledged that a mere written warning or reprimand does not constitute an adverse employment action if it

does not lead to tangible harm, such as "'ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities.'" *Id.* at 648 (quoting *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001)); *see also Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some tangible job consequence accompanying th[e] reprimands, we decline to broaden the definition of adverse employment action to include them"). Because Holmes has offered no evidence that the attendance violation had an actual impact on her employment at Tribune, no reasonable jury could find this was an actionable adverse employment action.

### c. Underpayment

Finally, Holmes argues that she was underpaid relative to her non-African-American co-workers. In support, she offers undisputed evidence that she was the second-lowest paid production operator at Tribune, despite having served in the position for longer than at least six Hispanic co-workers. Though she does not appear to contend that she is similarly situated to all of these employees, Holmes argues that she was paid less than Moreno. Tribune does not dispute this but instead argues that the amount was minuscule and that Holmes was paid more than Moreno for several months in 2006 and 2007.

As discussed above, the Court considers Holmes and Moreno to have been similarly situated because they shared the same supervisor and job title and had equivalent performance ratings over a three-year period. Tribune's pay records reflect that at various times during her employment, specifically, January - October 2006 and

July - November 2007, Holmes was paid at an hourly rate greater than or equal to Moreno's hourly rate. But for her last fifteen-plus months at Tribune (November 2007 until January 2009), Holmes earned between six and ten cents less per hour than Moreno.

Based on these facts, a reasonable jury could find that Holmes has established a prima facie case of wage discrimination. Tribune argues that the pay difference was "measly," see Reply to Pl.'s Opp.'n to Def.'s Mot. for Summ. J. at 7, but it cites no authority for the proposition that a wage differential, even if small, cannot constitute prohibited discrimination. Tribune's only other argument is that Holmes has offered no evidence connecting the wage differential to her race. That, however, amounts to a contention that discrimination under Title VII must be proved directly and cannot be shown via *McDonnell-Douglas* burden-shifting. That is not the law. The Court concludes that a reasonable jury could find that Holmes has shown a prima facie case of wage discrimination based on her race.

The burden therefore shifts to Tribune to offer a legitimate, non-discriminatory reason for paying Moreno more than Holmes. It offered none in its summary judgment briefs. For this reason, Holmes has no obligation to show pretext at this stage. Summary judgment is inappropriate on her wage discrimination claim.

**2.     Harassment claim**

In count two, Holmes asserts that Tribune's differential treatment of her based upon her race and national origin created a hostile work environment in violation of Title VII. Tribune argues that Holmes failed to exhaust administrative remedies regarding

this claim because it is outside of the scope of her EEOC charge. Tribune also argues that there is no genuine issue of fact regarding whether the alleged harassment was sufficiently severe to be actionable.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A plaintiff may assert such a claim, however, if there is "a reasonable relationship between the allegations in the charge and the claims in the complaint" and "the claim in the complaint can be reasonably expected to grow out of an EEOC investigation of the allegations in the charge." *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000). Put differently, "the EEOC and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (emphasis in original).

In her first EEOC charge, Holmes alleged that she was "subjected to different terms and conditions of employment, including but not limited to, denial of training" and "disciplined for an infraction for which similarly situated non-Black, non-American employees are not disciplined." First Am. Compl, Ex. C. In her complaint in this case, Holmes alleged that Tribune employees "threatened, degraded, interfered with, and ridiculed [Holmes] because of her race, color and/or national origin" and that her supervisor, Hoshell, suggested that she should learn Spanish. First. Am. Compl. ¶ 37. Though Holmes's EEOC charge did not specifically allege a hostile work environment in general or these actions in particular, the Court concludes that the allegations contained in count two of Holmes's complaint reasonably could be expected to grow out

of an EEOC inquiry into her administrative charge.  For this reason, the Court is unpersuaded that Holmes failed to exhaust her administrative claim.

The Court concludes, however, that Holmes's hostile work environment claim cannot survive summary judgment.  To succeed on her claim, Holmes must establish that "(1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability."  *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).  "To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment" that is "both subjectively and objectively offensive."  *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009).  Courts consider the severity and frequency of the conduct and whether it is threatening or humiliating or unreasonably interferes with the employee's work performance.  *Id.*

No reasonable jury could find that Holmes has satisfied the third element of this test.  Holmes's claim rests in part upon her allegations that she was not promoted and was paid less and disciplined more than colleagues outside of her racial and ethnic group.  But she has not provided evidence from which a reasonable jury could find that this adverse treatment was so severe that it interfered with her day-to-day work or created an abusive atmosphere.  Without more evidence of how the purported discrimination affected Holmes's performance of her job duties, these allegations are insufficient to raise a genuine issue of fact on the third element of the standard.

Holmes contends that Tribune did nothing to "prevent or remedy the ongoing harassment and discrimination by [her] co-workers," but she provides little detail as to exactly what harassment she suffered. First Am. Compl. ¶ 34. The only specifics she offers are that (1) co-workers tampered with her work materials and (2) Hoshell told her at one point that she should learn Spanish. But Holmes has offered no evidence suggesting that the alleged tampering had a racial character or purpose, without which it adds nothing to her harassment claim. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Hoshell's alleged suggestion about learning Spanish is arguably racial in nature, but "[o]ffhand comments [and] isolated incidents" do not rise to the level of creating a hostile work environment. *Scruggs*, 587 F.3d at 840. For these reasons, the Court concludes that no reasonable jury could find in favor of Holmes on her harassment claim.

3.      **Retaliation claim**

Finally, Holmes argues that Tribune terminated her employment in retaliation for her first EEOC charge. Tribune counters that it terminated Holmes because she left threatening messages on her supervisor's voice mail system.

A plaintiff can prove retaliation using direct or indirect proof. The direct method requires evidence of a protected activity by the employee, adverse action by the employer, and a causal connection between the two. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). The plaintiff may also "offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected

group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* at 792.

Holmes seeks to prove her retaliation claim via the direct method. She has provided evidence establishing that she engaged in a protected activity (filing her EEOC charge) and suffered an adverse employment action (termination). She has not, however, provided evidence sufficient for a reasonable jury to find a causal connection between these two events. Holmes relies heavily on the fact that her termination occurred little more than a month after she filed her first EEOC charge. This is unpersuasive. As the Seventh Circuit has noted, "suspicious timing alone is rarely sufficient to defeat a motion for summary judgment." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 736 (7th Cir. 2011). This is not one of those rare cases. In fact, the timing of Holmes's termination strongly suggests that it was linked to her voicemail messages, not the EEOC charge: she was fired a mere four days after leaving the messages and just one day after Gresham first listened to them.

Holmes has offered little other direct or circumstantial evidence to support her claim of retaliatory termination. She points to the e-mails written by Gresham and Hoshell regarding Holmes, but these e-mails, whether considered separately or together, are not suggestive of an intent to take action against Holmes because she had filed an EEOC charge. To the contrary, they reflect Gresham and Hoshell's concern that Holmes's voicemails represented an escalation of her inappropriate behavior. For example, Hoshell's e-mail referred to Holmes's messages and suggested that her continued presence could "poison[] the entire crew." Hoshell Dep., Ex. 9. Though Hoshell alluded to Holmes's note-taking during shifts, there is no evidence from

which a reasonable jury could find that he linked this to Holmes's EEOC charge. For these reasons, and because Holmes admits to having left the voicemails mere days before her supervisors at Tribune received them, conferred, and decided to terminate her employment, no reasonable jury could find a causal connection between her EEOC charge and her termination.

Though Holmes has not argued her retaliation claim under the indirect method, the Court concludes that she is unable to prove her claim that way either. Under the indirect method, a plaintiff must provide evidence that (1) she engaged in protected activity; (2) Tribune took a materially adverse action against her; (3) she was performing her job satisfactorily; and (4) she was treated worse than a similarly situated employee who had not engaged in protected activity. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010).

Holmes cannot satisfy the fourth element of this test because she has not identified an employee who was similarly situated to her but treated better. As discussed above, she argues that several of her co-workers were also late to work during the week in which she was disciplined for tardiness. Aside from her own testimony, however, Holmes offers no evidence that these individuals were not disciplined. More importantly, none of the evidence presented by either party suggests that any of Holmes's co-workers avoided termination after actions similar to Holmes's voicemail messages. For this reason, Holmes cannot establish a prima facie case of retaliation indirectly. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (to be similarly situated to plaintiff, a co-worker must have "engaged in

comparable rule or policy violations"); *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003) (when employees do not have "a comparable set of failings," no inference of discrimination can be drawn from an employer's differential treatment of them).

**Conclusion**

For the foregoing reasons, the Court grants Tribune's motion for summary judgment as to counts two and three and denies it as to count one. The case is set for a status hearing on June 29, 2011 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 13, 2011